IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RODNEY M. GUY,

                Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

1:13-cv-00139-MA

OPINION AND ORDER

MARLENE R. YESQUEN
Black, Chapman, Webber & Stevens
221 Stewart Avenue, #209
Medford, Oregon 97501

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

NICOLE A. JABAILY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Rodney M. Guy, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) disability benefits under Title XVI of the Social Security Act (the Act). See 42 U.S.C. §§ 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant application for SSI on February 9, 2009 alleging disability due to "[p]ost traumatic brain injury, hip problems." Tr. 158. Plaintiff's claim was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) presided over a hearing on June 17, 2011, at which Plaintiff was represented by counsel and testified. Vocational Expert (VE) Frank Lucas was also present throughout the hearing and testified.

On July 18, 2011, the ALJ issued a decision denying Plaintiff's application. The Appeals Council declined review, and Plaintiff timely appealed.

## FACTUAL BACKGROUND

Born on July 24, 1972, Plaintiff was 38 years old on the alleged onset date of disability and 39 years old on the date of

the hearing.    Plaintiff has a high school education with some college and has past relevant work as a Construction Laborer, Fire Crew Member, and Maintenance Engineer.  Tr. 28, 44-45, 163.

Plaintiff alleges his conditions became disabling on July 24, 1976.[1]  Tr. 139.  Plaintiff testified about his limitations at the hearing and submitted an Adult Function Report.  Tr. 172-79.  Kate Baxted, a friend of Plaintiff's and social service coordinator, testified at the hearing on Plaintiff's behalf and submitted a Third Party Function Report.  Tr. 181-88.

Edwin E. Pearson, Ph.D., conducted a Psychodiagnostic Assessment and submitted an evaluative opinion in relation to a prior disability application.  Tr. 304-08.  Christopher Komanapalli, M.D., submitted an evaluation of Plaintiff's physical capabilities in relation to the prior application.  Tr. 311-15.  On April 15, 2009, Thomas Brent Shields, Ph.D., conducted a Psychological Evaluation for purposes of assessing whether Plaintiff has any learning disorders that required accommodation in his college courses.  Tr. 317-21.  On April 24, 2009, Michael R. Villanueva, Psy.D., conducted a comprehensive psychodiagnostic examination and submitted an opinion in relation to the instant

---

[1] Plaintiff initially listed his alleged onset date as July 24, 1976.  At the hearing, however, Plaintiff moved to amend the onset date to January 29, 2010.  Tr. 40.  The ALJ granted Plaintiff's motion, but for reasons that are unclear listed July 24, 1976 as the onset date in the decision.  Plaintiff does not raise this as error.

3 - OPINION AND ORDER

application for SSI. Tr. 322-26. Yin Kan Hwee, M.D., conducted a physical examination on April 25, 2009 in relation to the instant disability application and submitted an evaluative opinion. Tr. 329-33. Megan Orr, F.N.P., one of Plaintiff's primary care providers, submitted a Physical Residual Functional Capacity Questionnaire. Tr. 372-76. Guenther Knoblich, M.D., Plaintiff's treating orthopedist, also submitted a Physical Residual Functional Capacity Questionnaire. Tr. 403-07. Finally, on March 29, 2011, Dr. Pearson conducted a Neuropsychological Screening and submitted another evaluative opinion, as well as a Medical Source Statement of Ability to do Work-Related Activities (mental). Tr. 439-49.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined Plaintiff has not engaged in substantial gainful activity since the application date, February 9, 2009. See 20 C.F.R. §§ 416.971 et seq.; Tr. 22.

4 - OPINION AND ORDER

At Step Two, the ALJ determined Plaintiff's right hip osteoarthritis, cognitive disorder, learning disorder, and polysubstance abuse in remission are severe impairments. See 20 C.F.R. § 416.920(c); Tr. 22.

At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 23-24.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a range of sedentary work, except that Plaintiff can do no more than two hours of standing or walking and no more than six hours of sitting in an 8-hour workday with normal breaks; can occasionally lift up to 20 pounds and frequently lift up to 10 pounds; can frequently balance, but only occasionally climb, stoop, kneel, crouch, or crawl; and is limited to simple, unskilled work, which the ALJ defined at the hearing as routine, repetitive tasks with simple instructions.  Tr. 24-28, 89.

At Step Four, the ALJ found Plaintiff cannot perform his past relevant work as a Construction Laborer, Fire Crew Member, and Maintenance Engineer.  See 20 C.F.R. § 416.965; Tr. 28.

At Step Five, however, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform, including Bench Hand, Toy Stuffer, and Table Worker. See 20 C.F.R. §§ 416.969, 416.969(a); Tr. 29.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises three primary issues on review. First, Plaintinff argues the ALJ improperly discounted his testimony. Second, Plaintiff maintains the ALJ improperly weighed the medical testimony by discrediting the opinions of Drs. Pearson and Knoblich.[2] Third, Plaintiff argues the ALJ improperly discredited the lay testimony of Ms. Baxted. Accordingly, Plaintiff argues the ALJ's vocational hypothetical to the VE was incomplete and the ALJ erroneously relied on the VE's testimony.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

---

[2] In the title of the section of Plaintiff's Opening Brief concerning the medical testimony, Plaintiff asserts the ALJ improperly considered the opinions of Dr. Shields and Tracy Taschler, Q.M.H.P.  Pl.'s Opening Brief (#16) at 26.  Aside from summarizing Dr. Shields' and Ms. Taschler's record evidence, however, Plaintiff does not discuss their opinions in his argument section concerning the medical testimony, and only gives them a conclusory passing mention at the end of his section regarding Plaintiff's and Ms. Baxted's testimony.  <u>Id.</u> at 33. Because Plaintiff failed to specifically and distinctly raise these arguments in his opening brief, I find he has waived his arguments concerning Dr. Shields' and Ms. Taschler's opinions. <u>See</u> <u>Carmickle v. Commissioner Soc. Sec. Admin.</u>, 533 F.3d 1155, 1161 n.2 (2008).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I. **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen, 80 F.3d at 1281-82. Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281.

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility

determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified his hip problems are painful and cause difficulty sitting. Tr. 46. As to his mental limitations, Plaintiff reported he has memory problems secondary to a traumatic brain injury suffered as a child. Tr. 46-47. These cognitive problems, Plaintiff testified, include difficulty learning and spelling. Tr. 62. As to education, Plaintiff reported he took 13 credits of community college classes in the prior semester, passed 10 credits, and had "[f]airly good grades." Tr. 59. Plaintiff testified he can sit through his 45-minute classes, but that he is allowed to take breaks at will. Tr. 59. Plaintiff reported his memory problems have not worsened over the years, but that they caused some problems at his prior jobs. Tr. 64. In addition to memory problems, Plaintiff testified he periodically suffers severe headaches. Tr. 47.

As to his physical limitations, Plaintiff reported he takes Aleve once or twice per week for pain control, but that he is not in any kind of physical therapy and does not use an assistive device. Tr. 48-49. Plaintiff testified his hip condition and back pain interfered with his prior work as a firefighter and prevented him from performing janitorial work because his physical conditions cause him pain when he bends over, kneels, or squats. Tr. 52-53. Plaintiff reported he can only walk one block without rest or severe pain, can sit for one hour without shifting, but would need to take 10-15 minute breaks every hour. Tr. 54-55. As to lifting, Plaintiff reported he can only rarely lift 10 pounds because of back pain. Tr. 55. As to activities of daily living, Plaintiff reported that he tried to keep weight off his hip by "sitting on the couch," and has trouble putting on clothes and tying his shoes. Tr. 57-58. Plaintiff testified his hip pain interferes with his sleep. Tr. 58. To get around, Plaintiff reported he rides his bike, but, while it is easier than walking, his hip frequently hurts afterward. Tr. 61.

In his Adult Function Report, Plaintiff reported that in a normal day he makes a cup of coffee, watches television, and sometimes goes to computer and manufacturing classes. Tr. 172. As to hygiene, Plaintiff reported he showers and shaves once per week. Tr. 173. Plaintiff noted he helps pick up dishes around the house, but does not do yard work because he is "extremely forgetful" and

his hip causes immobility at times.  Tr. 175.  Plaintiff checked that his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others.  Tr. 177.

The ALJ rejected Plaintiff's testimony regarding his mental conditions because his allegations of disabling mental limitations are inconsistent with his work and educational record.  Tr. 25-26. With respect to Plaintiff's physical allegations, the ALJ found that Plaintiff's degenerative arthritis in the right hip "justifies certain exertional and postural limitations due to chronic pain," but found that the following factors suggest "that [Plaintiff's] pain symptoms are not necessarily disabling in nature."  The ALJ rejected Plaintiff's testimony as to his physical limitations because his alleged disabling physical limitations are inconsistent with his conservative course of medical treatment, including managing pain with over-the-counter anti-inflammatories, and because Plaintiff walks without assistance and rides his bicycle. Tr. 26-27.  I conclude these reasons, taken together, constitute clear and convincing reasons for rejecting Plaintiff's testimony.

The ALJ's citation of a conservative course of medical treatment is a convincing basis to discredit Plaintiff's pain testimony.  Plaintiff's occasional use of over-the-counter anti-inflammatory drugs to control his hip pain can reasonably be seen

as inconsistent with his testimony of a disabling hip condition, as it is reasonable to expect a person experiencing severe hip pain to actively pursue more aggressive pain control. While Plaintiff's suggestion in his briefing that he did not want narcotic pain medication due to past drug addiction problems is also reasonable, it does not make the ALJ's conclusion concerning Plaintiff's use of Aleve unreasonable, and does not explain why Plaintiff did not seek treatment such as stronger non-narcotic pain medication, physical therapy, or even the use of ice and heat packs. Tr. 48, 409.

Further supporting the ALJ's citation of a conservative course of treatment is the fact that Plaintiff did not see a doctor about his hip pain until 2007 when he reported the hip problems to Dr. Komanapalli, a disability examining physician, despite alleging the condition began in 1999 or 2000. Tr. 311. While Plaintiff's hip condition is expected to worsen over time as degenerative in nature, his failure to seek any medical treatment for the condition between 1999 and 2007 further supports the ALJ's rejection of the full extent of Plaintiff's pain symptom testimony.

Finally, although I acknowledge the potential difficulties in travel between Medford and Portland, I find the ALJ reasonably discredited Plaintiff's symptom testimony because he failed to follow up on a referral for surgery at Oregon Health Sciences University. On April 13, 2010, Plaintiff sought and was granted a referral for surgery at Oregon Health Sciences University (OHSU) in

11 - OPINION AND ORDER

Portland. Tr. 371. Plaintiff, however, did not follow up on the referral because he did "not feel able to travel to OHSU." Tr. 409. Although I find this reason less persuasive than the above, I conclude the ALJ could rationally conclude Plaintiff's failure to follow up on the OHSU surgery referral indicates Plaintiff's pain symptoms are not as severe as alleged, especially in light of the otherwise conservative treatment Plaintiff sought. The ALJ properly and convincingly cited Plaintiff's relatively conservative course of treatment to reject Plaintiff's testimony of disabling hip pain.

The ALJ also properly cited Plaintiff walking without assistance and riding a bicycle for transportation to discredit Plaintiff's testimony of disabling hip pain. While I acknowledge these activities do not themselves demonstrate Plaintiff is capable of full-time employment, the ALJ reasonably concluded they are inconsistent with Plaintiff's allegations of severe hip pain. Indeed, even in November of 2010, Plaintiff was walking without a limp and reported to his primary care provider that he had to walk approximately three-to-four hundred yards to the bus stop. Tr. 409-10. While he said this amount of walking left him "wiped out," it is substantially more than the one block Plaintiff reported he could walk at the hearing. Tr. 54. The ALJ properly noted that the record evidence of Plaintiff walking and bicycling contradicted

his testimony of severe hip pain causing very substantial limitations.

Finally, the ALJ reasonably cited Plaintiff's work and educational record as a reason to reject Plaintiff's allegations of disabling mental impairments.  Plaintiff testified at the hearing that his memory problems have not worsened over the years.  Tr. 64. Yet Plaintiff previously worked on a fire crew, in construction, and in various maintenance and janitorial jobs.  Tr. 78-83.  In particular, as the ALJ noted, Plaintiff reported in an April 24, 2009 evaluation with Dr. Villanueva that he did not have any difficulties performing his work with the forest fire crew, and was considering going back to that job the following summer.  Tr. 323. The ALJ reasonably cited Plaintiff's work history as a reason to reject Plaintiff's testimony that his mental limitations precluded him from even unskilled work.

In addition, the ALJ reasonably cited Plaintiff's modest academic success as a reason to reject his testimony as to the extent of his mental limitations.  Plaintiff testified at the hearing that although he failed some of his community college classes and had to drop some others, he maintained a 2.88 GPA.  Tr. 65.  Even considering Plaintiff's alleged accommodations at college, it was reasonable for the ALJ to conclude that if Plaintiff could retain the information necessary to maintain a 2.88 GPA, he could retain the information necessary to perform unskilled

work defined as routine, repetitive tasks with simple instructions. Tr. 89.

I conclude these reasons, taken together, constitute clear and convincing reasons for rejecting the full extent of Plaintiff's alleged limitations. Notably, the ALJ did not entirely reject Plaintiff's allegations, as he included significant mental and physical limitations in the RFC. The ALJ appropriately weighed Plaintiff's testimony.

## II. **Medical Testimony**

Plaintiff next argues the ALJ erred in his consideration of the medical testimony by improperly rejecting the opinions of Drs. Pearson and Knoblich. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

"'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

## A.  Dr. Knoblich

Dr. Knoblich, Plaintiff's treating orthopedist, submitted a Physical Functional Capacity Questionnaire on August 14, 2010 opining about Plaintiff's physical functional limitations. Tr. 403-07. Dr. Knoblich opined that Plaintiff would frequently experience pain severe enough to interfere with attention and concentration needed to perform even simple tasks, could only walk one block without rest or severe pain, sit for one hour at a time with shifting, and only stand for ten minutes at a time. Tr. 404. In total, Dr. Knoblich opined Plaintiff could only sit and stand or walk for less than two hours each in an eight-hour workday. Tr. 405. Dr. Knoblich wrote that Plaintiff "cannot work at this time," and that "walking increases pain dramatically," and checked that if Plaintiff worked, he would need 10-15 minute breaks every hour. Id. Dr. Knoblich limited Plaintiff to lifting less than 10 pounds

occasionally and 10 pounds rarely, and opined that Plaintiff could only rarely twist, bend, or climb stairs, and never crouch, squat, or climb ladders. Tr. 405-06. Dr. Knoblich opined Plaintiff would be expected to miss more than four days of work per month because of hip pain. Tr. 406. Importantly, however, Dr. Knoblich noted that the earliest date his description of symptoms and opined limitations applied to Plaintiff was "since 1999." Tr. 407.

The ALJ gave little weight to Dr. Knoblich's opinion because it was inconsistent with the objective findings in Dr. Hwee's evaluation, Plaintiff's self-reports about walking and cycling, conservative course of treatment, and Plaintiff's testimony that he has good attendance at college. Tr. 28. Because Dr. Knoblich's opinion is contradicted by the evaluating opinions of Drs. Komanapalli and Hwee, as well as the reviewing opinion of Martin Kehrli, M.D., the ALJ was required to cite specific and legitimate reasons for rejecting Dr. Knoblich's opinion. Lester, 81 F.3d at 830-31. I conclude the ALJ properly discredited Dr. Knoblich's opinion.

The ALJ properly rejected Dr. Knoblich's opinion because it was inconsistent with the findings of Dr. Hwee. Unlike Dr. Knoblich's very significant findings, Dr. Hwee observed that Plaintiff walked around the room, took his shoes off, and sat without difficulty. Tr. 330. As to Plaintiff's hip, Dr. Hwee found "mild diminished range of motion," but "no significant

diminished strength." Tr. 332. Plaintiff reported to Dr. Hwee that "[h]e can walk about one-fourth of a mile, and then his hip starts to be somewhat painful. He can stand for two hours without difficulty. He can sit for 20 minutes before needing to readjust his position." Tr. 329.

The ALJ reasonably found these findings undercut Dr. Knoblich's opinion because they are manifestly inconsistent with Dr. Hwee's opinion in many respects. Contrary to Dr. Hwee's findings, Dr. Knoblich opined Plaintiff can only walk one block without severe pain, can only stand for 10 minutes, had significant pain and limitation with range of motion, and that these limitations had existed since 1999, ten years before Dr. Hwee's findings. Tr. 403-04. Inconsistency with Dr. Hwee's findings in his examination is a compelling reason to discredit Dr. Knoblich's opinion.

In addition, the ALJ reasonably discredited Dr. Knoblich's opinion because it is inconsistent with Plaintiff's self-reports of walking and riding a bicycle. Indeed, as discussed above, Plaintiff described walking approximately one-quarter mile to the bus stop, albeit while feeling "wiped out" at the end. Tr. 409. Additionally, the ALJ reasonably found Dr. Knoblich's opinion of very significant hip limitations inconsistent with Plaintiff's report of bicycling for transportation. Finally, the ALJ reasonably found Dr. Knoblich's opinion of persistent, significant

hip pain inconsistent with Plaintiff's treatment of such pain with only occasional use of over-the-counter anti-inflammatory medication.   I conclude the above reasons, taken together, constitute specific and legitimate reasons to reject the full extent of limitations contained in Dr. Knoblich's report.  The ALJ appropriately weighed Dr. Knoblich's opinion.

### B. · Dr. Pearson

Plaintiff argues the ALJ improperly rejected Dr. Pearson's 2011 evaluative opinion.  Dr. Pearson is an examining physician who examined Plaintiff twice in relation to his disability applications.   Dr. Pearson opined that Plaintiff "would have moderate to severe problems understanding and remembering instructions in an entry-level work environment, with problems at the severe level occurring when directions or instructions increase in complexity." Tr. 444.  In addition, Dr. Pearson observed that Plaintiff would have "moderate problems with pace, persistence, and concentration, certainly most noticeable in a work situation requiring attention to visual detail, rapid pacing, and error-free performance." Id.  Dr. Pearson did not think Plaintiff would have significant problems with social relations in the workpalce.   Id.

In addition to his written opinion, Dr. Pearson distilled his thorough and lengthy findings on evaluation into a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which he checked that Plaintiff would have no limitation in his

18 - OPINION AND ORDER

abilities to understand and remember simple instructions, carry out simple instructions, or make judgments on simple work-related decisions. Tr. 447. Dr. Pearson checked, however, that Plaintiff would be markedly limited in his ability to understand and remember complex instructions, and moderately limited in his abilities to carry out complex instructions and make judgments on complex work-related decisions. Id. As to social performance, Dr. Pearson checked that Plaintiff would be mildly limited in his abilities to interact appropriately with the public, supervisors, and co-workers, as well as to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 448. Dr. Pearson additionally noted that Plaintiff would likely be "slow and error-prone" in work requiring visual information processing. Id. As to the duration of Plaintiff's limitations, Dr. Pearson opined they are "lifelong, possibly worsening over the years in context of extensive substance abuse." Id.

Because the limitations in Dr. Pearson's 2011 opinion were contradicted by Dr. Villanueva's evaluative opinion, Dr. Pearson's 2007 evaluative opinion, and the reviewing opinion of Dorothy Anderson, Ph.D., the ALJ was required to cite specific and legitimate reasons to reject Dr. Pearson's 2011 opinion. I conclude the ALJ failed to do so, but that any error in weighing Dr. Pearson's 2011 opinion is harmless because the RFC adequately accounts for Dr. Pearson's opined limitations.

19 - OPINION AND ORDER

The ALJ's sole stated reason for rejecting Dr. Pearson's 2011 opinion was that Plaintiff's modest academic success "suggests that he retains sufficient cognitive functioning to perform at least some basic mental work-related activities." Tr. 26. The ability to do such basic mental work-related activities, however, is not inconsistent with Dr. Pearson's opinion, as Dr. Pearson opined Plaintiff was not limited in his ability to complete such activities. Tr. 447.

I find the ALJ's error in at least nominally rejecting Dr. Pearson's opinion was harmless because the RFC adequately accommodates Dr. Pearson's opinion. As discussed above, the most significant limitations Dr. Pearson endorsed were in Plaintiff's abilities to understand and remember complex instructions, carry out complex instructions, and make complex work-related decisions, as well as the limitation concerning visual information processing. In the RFC, however, the ALJ limited Plaintiff to simple, unskilled work, which he defined to the VE as "routine, repetitive tasks with simple instructions," a limitation I find "consistent with restrictions identified" in Dr. Pearson's opinion. Stubbs-Danielson, 539 F.3d at 1174; Tr. 24, 89. In addition, I find the checked mild limitations in social interaction and responding to changes in a work setting did not require any additional accommodation in the RFC in light of Dr. Pearson's contemporaneous opinion that Plaintiff would not have significant problems in

social relations in a work environment.[3]  Tr. 444.  Thus, while I find the ALJ erred by at least purporting to reject Dr. Person's 2011 opinion, I conclude such error was harmless because the limitations opined by Dr. Pearson were sufficiently accommodated by the RFC.

## III. Lay Testimony

Plaintiff next asserts that the ALJ cited insufficient reasons to reject the testimony of Plaintiff's friend and social service coordinator, Kate Baxted.  Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  To discount lay witness testimony, the ALJ must give reasons that are germane to the witness.  Id.

At the hearing, Ms. Baxted testified she sees Plaintiff between one and four times per month, and that she used to see him more often.  Tr. 68.  Ms. Baxted reported she helps Plaintiff with his Social Security papers and counsels Plaintiff.  Id.  Ms. Baxted reported Plaintiff always "forgets what you tell him to do," and that Plaintiff's physical limitations precluded him from helping with chores around Ms. Baxted's social service center.  Tr. 69.

---

[3] Plaintiff indicated he did not have trouble in college getting along with other students or professors.  Tr. 66. Additionally, when asked, the VE opined that a limitation to occasional contact with the general public would not affect any of the jobs the VE identified as available to Plaintiff.  Tr. 89.

Ms. Baxted reported that Plaintiff has significant memory problems and is "confused most of the time." Tr. 71. When asked by the ALJ at the hearing, Ms. Baxted reported that she would be surprised to hear Plaintiff has nearly a B-average in his college coursework. Tr. 73.

In her Third Party Function Report, Ms. Baxted reported Plaintiff "had always been limited in his ability to get things done." Tr. 182. Ms. Baxted reported that Plaintiff does a poor job attending to hygiene and "forgets what he is doing and walks off." Tr. 182-83. Ms. Baxted checked that Plaintiff was limited in his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, understand, and follow instructions. Tr. 186.

The ALJ gave little weight to Ms. Baxted's testimony because, as her surprise at Plaintiff's relative academic success demonstrates, she is not sufficiently familiar with Plaintiff's functional limitations. I find this is a germane reason to reject Mx. Baxted's testimony. The ALJ reasonably found Plaintiff's ability to earn passing grades at community college inconsistent with Ms. Baxted's testimony of very significant memory limitations. In addition, the ALJ reasonably pointed out that Ms. Baxted has a relatively modest amount of contact with Plaintiff. Tr. 28. Accordingly, I conclude the ALJ reasonably rejected Ms. Baxted's opinion.

Because I conclude the ALJ properly considered Plaintiff's testimony and Ms. Baxted's testimony, and did not commit reversible error in his consideration of the medical evidence, I reject Plaintiff's argument that the ALJ made improper findings and improperly relied on the testimony of the VE based on an inadequate vocational hypothetical. The ALJ was entitled to rely on the VE's testimony to carry the Commissioner's burden at Step Five.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this _2_ day of April, 2014.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge